IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DREW KING and FOSTER ADAMS KING,

    Plaintiffs,

                                3:16-CV-630-PK

v.

                                OPINION AND
                                ORDER OF REMAND

JAMES THOMAS KING, JR.,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiffs James Drew King ("James") and Foster Adams King ("Foster" and, collectively

with James, "plaintiffs" or "sons") filed this action against defendant James Thomas King, Jr.

("defendant" or "father" or "Dr. King") in the Multnomah County Circuit Court on January 20,

2016. By and through their complaint, plaintiffs allege that defendant has violated the terms of a

Stipulated General Judgment of Dissolution of Marriage (the "Judgment") governing the

disposition of assets held by defendant and his former wife, plaintiffs' mother Rebecca Bragg

King ("Rebecca Bragg" or "former wife" or "mother"), before, during, and after the term of

defendant's marriage with Rebecca Bragg. Arising out of that violation, plaintiffs allege

defendant's liability for breach of contract under Oregon common law, specifically alleging one

Page 1 - OPINION AND ORDER OF REMAND

breach of contract claim for money damages and a second breach of contract claim, arising out of

precisely the same facts as the first, for specific performance of defendant's obligations under the

Judgment. In connection with their breach of contract claims, plaintiffs (who were residents of

Oregon at the time they filed their complaint in Multnomah County) seek award of damages in

the amount of $150,000 plus the fair market value of certain real property and of certain specified

retirement accounts maintained by defendant (who was a resident of Nevada at the time plaintiffs

filed their complaint in Multnomah County), as well as prejudgment interest on all money

damages, injunctive relief to require defendant to comply with the terms of the Judgment, and

award of costs. Defendant removed plaintiffs' action to this court effective April 13, 2016, on the

basis of diversity jurisdiction.

Now before the court is defendant's motion (#5) to dismiss for lack of jurisdictional

standing and/or unripeness, and in the alternative to dismiss for failure to state a claim. I have

considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers

on file. For the reasons set forth below, defendant's motion is granted in part and denied in part

as moot, and plaintiffs' action is remanded to the Multnomah County court where it was

originally filed.

## LEGAL STANDARDS

### I.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The federal courts are courts of limited jurisdiction. *See, e.g.*, *Exxon Mobil Corp. v.*

*Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of*

*America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[]

outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1039 n. 2, and "need not presume the truthfulness of the plaintiff's allegations," *id., citing White*, 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## II.    Challenges to Federal Subject-Matter Jurisdiction Following Removal

Following a defendant or other party's removal of an action from state to federal court, a party opposed to such removal may seek to have the removed case remanded to state court if the district court lacks subject-matter jurisdiction over the action notwithstanding its removal, or if the removing party's removal procedure was defective. *See* 28 U.S.C. § 1447(c). If at any time prior to final judgment it appears that a federal court lacks subject-matter jurisdiction over a removed case, the court must remand the action to state court. *See* 28 U.S.C. § 1447(c). By contrast, where a party seeks remand on the basis of defects in removal procedure, the party opposed to removal must move for remand within thirty days following removal. *See id.*

The removal statutes are generally construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *see also, e.g., Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("We strictly construe the removal statute against removal jurisdiction") (citations omitted). Cases first filed in state court and then removed to federal court are generally subject to a "strong presumption" against finding removal jurisdiction. *See Gaus*, 980 F.2d at 566; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-292 (1938). The burden of establishing federal subject-matter jurisdiction for purposes of removal is on the party seeking removal, *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004), *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006), and factual questions regarding the basis for removal are generally to be resolved in favor of remanding the case to state court, *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

In considering a post-removal challenge to federal subject-matter jurisdiction, the court

assumes the truth of the allegations in the complaint and that a jury will ultimately return a

verdict in the plaintiff's favor on all claims alleged therein. *See, e.g.*, *Kenneth Rothschild Trust v.*

*Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). In addition, the court

may consider the contents of the defendant's removal petition, relevant "summary-judgment-type

evidence" proffered at the time of removal, and supplemental evidence proffered at the time

federal subject-matter jurisdiction is challenged. *Valdez*, 372 F.3d at 1117; *see also Cohn v.*

*Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002). It is well established that "[c]onclusory

allegations" or allegations based on "information and belief" are insufficient to satisfy the

defendant's burden to establish federal jurisdiction. *Matheson*, 319 F.3d at 1090-1091; *Valdez*,

372 at 1117. If, after consideration of all material allegations and evidence, "doubt regarding the

right to removal exists, [the] case should be remanded to state court." *Matheson*, 319 F.3d at

1090.

## III.    Motion to Dismiss for Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any

merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

Page 5 - OPINION AND ORDER OF REMAND

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556. "In sum, for a

complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to

relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), *citing Iqbal*, 556

U.S. at 678.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to

dismiss, this court accepts all of the allegations in the complaint as true and construes them in the

light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007).

Moreover, the court "presume[s] that general allegations embrace those specific facts that are

necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994),

*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however,

accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v.*

*Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND[1]

### I.    The Parties

Plaintiffs James and Foster are residents of Oregon, and are the sons of defendant Dr.

King and his former wife Rebecca Bragg. Defendant Dr. King is currently a resident of Nevada,

---

[1] Except as otherwise indicated, the following recital of facts reflects my presumption,
for purposes of the motion now before the court, that all of the facts alleged in plaintiffs'
complaint are true and accurate.

and was a resident of Oregon at the time his marriage to Rebecca Bragg dissolved.  Dr. King has

remarried since the dissolution of his marriage to Rebecca Bragg.

## II.    The Parties' Dispute

On November 7, 2006, Dr. King and his former wife entered into a Stipulated General

Judgment of Dissolution of Marriage executed and issued by Multnomah County Circuit Judge

Katherine Tennyson (the Judgment).  The Judgment commemorates Dr. King and Rebecca

Bragg's agreement that the Multnomah County Circuit Court would "retain jurisdiction over them

to enforce all of the provisions" of the Judgment.  Judgment, ¶ 24.  In addition, the Judgment

provides that in the event of the contemplated remarriage of either Dr. King or Rebecca Bragg,

such remarrying party would be required first to:

> caus[e] a prenuptial agreement to be prepared and signed wherein that party or the
> estate of that party shall retain the assets acquired prior to the remarriage, and,
> further, that those assets acquired prior to the remarriage shall become the assets
> of Rebecca Foster King [("Rebecca Foster" or "daughter"), daughter of defendant
> Dr. King by a further previous marriage], [plaintiff] James . . . , and [plaintiff]
> Foster . . . , equally, in the event of a subsequent divorce, separation or death of
> [Dr.] King, and/or James . . . and Foster . . . in the event of a subsequent divorce,
> separation or death or Rebecca Bragg . . . .

Judgment, ¶ 31.

In final relevant part, the Judgment provides that:

> [Defendant Dr. King] shall obtain and maintain a life insurance policy in an
> amount not less than $150,000, naming his three children, Rebecca Foster . . . ,
> [plaintiff] James . . . , and [plaintiff] Foster . . . , as equal beneficiaries thereof,
> and he shall continue said life insurance coverage indefinitely.

>> A.    [Dr. King] shall have the right to change insurance policies so long
>> as the coverage provided is equal to or greater than set forth above.
>> * * *

>> B.    [Dr. King] shall direct the insurance company to provide [former

wife Rebecca Bragg] with notice if any premiums have not been
paid.

* * *

D.      [Dr. King] shall provide a certified copy of this Judgment to the
        appropriate life insurance company(ies) in accordance with the
        provisions of ORS 107.820(6). [Dr. King] shall also provide
        instructions to the insurance company(ies) to update its/their
        records to comply with the terms of life insurance provisions
        incorporated or included in any dissolution judgment.

* * *

F.      A child who is the beneficiary of any policy under this section
        upon which [Dr. King] is obligated to pay premiums, is entitled, in
        the event of default by [Dr. King], to pay the premiums on the
        policy and to obtain an award for reimbursements of any money so
        expended.

G.      A constructive trust shall be imposed over the proceeds of any life
        insurance owned by [Dr. King] at the time of [Dr. King]'s death
        should he fail to maintain life insurance in the amount and with the
        beneficiary designation set forth.  In the event that the life
        insurance benefits actually paid upon [Dr. King]'s death are less
        than the face amount specified, there shall also be a claim against
        [Dr. King]'s estate.

* * *

Judgment, ¶ 32.

        It appears that defendant Dr. King remarried in December 2012 (the "remarriage").

Plaintiffs believe that defendant did not enter into a prenuptial agreement before entering into the

remarriage.

        In January 2014, before this action was filed, plaintiffs obtained from defendant a

document entitled "Amended Prenuptial Agreement" purporting to be a prenuptial agreement

between defendant and his new wife (the "Prenuptial Agreement").  The Prenuptial Agreement

appears to contravene Paragraph 31 of the Judgment by providing that certain real property located in Nevada, which was apparently acquired by defendant prior to the remarriage, would be deemed community property between defendant and his new wife, rather than property of defendant only. The Prenuptial Agreement additionally appears to contravene Paragraph 31 of the Judgment by providing that defendant could redesignate the beneficiaries of certain retirement accounts apparently acquired by him prior to the remarriage.

At some unspecified time, defendant apparently allowed a life insurance policy in the amount of $150,000 as to which plaintiffs and Rebecca Foster were beneficiaries to lapse in apparent violation of Paragraph 32 of the Judgment.

## ANALYSIS

As a preliminary matter, I note that although defendant's obligations under the Judgment were never memorialized in any contract or other agreement, it is procedurally appropriate under Oregon law for plaintiffs to bring their claims as claims for breach of contract:

(1)    It is the policy of this state:

        (a)    To encourage the settlement of suits for marital annulment, dissolution or separation; and

        (b)    For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

(2)    **In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:**

        (a)    **As contract terms using contract remedies;**

(b)  By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

(c)  By any combination of the provisions of paragraphs (a) and (b) of this subsection.

(3)  A party may seek to enforce an agreement and obtain remedies described in subsection (2) of this section by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under subsection (2)(b) of this section is sought, complying with the statutory requirements for that remedy.  All claims for relief arising out of the same acts or omissions must be joined in the same proceeding.

(4)  Nothing in subsection (2) or (3) of this section limits a party's ability, in a separate proceeding, to file a motion to set aside, alter or modify a judgment under ORS 107.135 or to seek enforcement of an ancillary agreement to the judgment.

Or. Rev. Stat. § 107.104 (emphasis supplied).

Also seemingly incongruous on superficial consideration, but in fact procedurally appropriate, is defendant's election to remove plaintiffs' action to federal court on the basis of diversity jurisdiction only to move immediately for dismissal of plaintiffs' action for lack of federal subject-matter jurisdiction.  In effecting removal of plaintiffs' action, defendant asserted that the elements of diversity jurisdiction were all present, and defendant has not wavered from that position in subsequently arguing that this court is without jurisdiction to consider the merits of plaintiffs' claims.  That is, defendant does not argue that this court lacks statutory authority to exercise subject-matter jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) (the statute codifying the elements of diversity jurisdiction), but rather argues that this court lacks constitutional authority to exercise jurisdiction over this action, on the grounds that plaintiffs lack standing to bring their claims and/or that plaintiffs' claims are not yet ripe for adjudication.  Plaintiffs do not contest defendant's position that their claims are not justiciable in this court, but

argue that the correct remedy for that defect is remand, whereas defendant argues strenuously that this court must dismiss plaintiffs' claims outright.

It is well established that where a plaintiff lacks constitutional standing to bring a claim, the federal courts lack jurisdiction to award relief on or to decide the merits of that claim. *See e.g., Allen v. Wright,* 468 U.S. 737, 750-751 (1984). The Supreme Court articulated the three elements necessary for constitutional standing in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). Under *Lujan,* a plaintiff must have suffered an injury in fact, there must be a causal connection between the injury and the conduct of the defendant, and it must be likely that the injury can be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-561. An "injury in fact" for purposes of constitutional justiciability is "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citations omitted). Here, the injuries plaintiffs allege they have suffered in consequence of defendant's complained-of conduct are (i) the lapse of defendant's $150,000 life insurance policy, (ii) the Prenuptial Agreement's provision that the Nevada real property would be treated as community property of defendant and his new wife, and (iii) the Prenuptial Agreement's provision that defendant had authority to redesignate the beneficiaries of certain of his pre-remarriage retirement accounts.

Plaintiffs bring their breach of contract claims under Oregon law, and it is therefore to Oregon law that this court must look to determine whether plaintiffs have suffered an alleged injury sufficient to satisfy the *Lujan* requirements. In connection with a defendant's failure to comply with a contractual obligation to maintain life insurance for the benefit of a contracting party, the Oregon Supreme Court has held and reasoned as follows:

Page 11 - OPINION AND ORDER OF REMAND

> **It is well established that a cause of action for breach of a contract to maintain life insurance does not accrue until the death of the promissor.** . . . [This] result is consistent with our decision in *Lewis v. Siegman*, 135 Or 660, 296 P 51, 297 P 1118 (1931), in which we held (at p 665) that **an agreement to make a will "cannot be broken by nonperformance until the death of the testator since the testator has the whole of his life in which to perform."**  Similarly, in this case, the decedent had "the whole of his life" in which to perform his obligation to take out and maintain [an amount certain] in life insurance payable to plaintiff as trustee for his minor son.

*Carothers v. Carothers*, 260 Or. 99, 103-104 (1971) (citations omitted).  The Oregon courts do not appear to have revisited this question since it was decided by the *Carothers* court in 1971.

It seems clear that, under *Carothers*, plaintiffs have not yet been cognizably damaged by defendant's conduct in allowing the $150,000 life insurance policy to lapse; for purposes of the *Lujan* analysis, damage flowing from that lapse is, at this time, conjectural and hypothetical rather than actual or imminent, in that it remains possible that defendant could obtain life insurance in the contractually required amount prior to his death.[2]  It follows that plaintiffs' breach of contract claims are unripe at this time to the extent premised on lapse of defendant's life insurance policy.

That conclusion is only reinforced by analysis of the material provisions of the Judgment. As noted above, the judgment expressly contemplates the possibility that defendant's life insurance will lapse prior to his death (notwithstanding that Rebecca Bragg is entitled under the Judgment to notice of unpaid premiums, and that the beneficiaries of such insurance, including

---

[2]  Plaintiffs suggest that this may be impossible at defendant's current age and state of health, but as a general rule life insurance on a living person does not become categorically unavailable on actuarial grounds, but rather becomes more expensive as risk increases until it ceases to be cost-effective; there is no legal obstacle to prevent defendant from satisfying his insurance obligation under the Judgment by purchasing a prohibitively expensive policy.  In any event, whether or not defendant is insurable at this time is necessarily also conjectural.

plaintiffs herein, are entitled under the Judgment to pay any such unpaid premiums and to receive reimbursement therefor from defendant, *see* Judgment, ¶ 32(B), (F)), in which event the Judgment expressly provides that a constructive trust will be placed over any other life insurance maintained by defendant at the time of his death and that, in the event such other insurance is in an amount less than $150,000, plaintiffs and Rebecca Foster shall have a claim against defendant's estate in the amount of the shortfall. *See* Judgment, ¶ 32(G). This provision tends to support the conclusion that plaintiffs have not yet been cognizably injured by the lapse of the insurance policy, and will not be injured thereby at any time prior to defendant's death.

The reasoning of the *Carothers* court applies with equal force to plaintiffs' other alleged injuries. Just as defendant could foreclose any injury flowing from lapse of the insurance policy by purchasing a new policy of insurance in the requisite amount prior to his death, any of a number of possible events could occur prior to defendant's death which would prevent plaintiffs from suffering any concrete, actual injury in consequence of the designation of the Nevada real property as community property of defendant's current marriage, including, *e.g.*, the death of defendant's current wife prior to defendant's death, or renegotiation of the Prenuptial Agreement. Even more clearly, the possibility of injury in fact flowing from defendant's currently unexercised discretion under the Judgment to redesignate the beneficiaries of his specified retirement accounts is at this time necessarily hypothetical or conjectural, in that there is no suggestion anywhere in plaintiffs' complaint that such redesignation has already occurred , or is likely to.

It follows that plaintiffs' claims are not, at this time, justiciable in this court. Indeed, both defendant and plaintiffs are in full agreement with that conclusion. Defendant and plaintiffs differ only as to the appropriate remedy, with (as noted above) defendant arguing in favor of

outright dismissal, and plaintiffs' arguing in favor of remand to the Multnomah County court.

As discussed above, ordinarily remand is the appropriate outcome where a federal court determines that it lacks subject-matter jurisdiction over a removed case. *See* 28 U.S.C. § 1447(c); *see also Matheson*, 319 F.3d at 1090. Defendants argue forcefully that that general rule, and indeed Section 1447(c) itself, are inapplicable where the federal court lacks *constitutional* as opposed to *statutory* subject-matter jurisdiction over an action, chiefly citing in support of that theory the Ninth Circuit's decision in *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001). However, although *Lee* does stand for the proposition that constitutional justiciability is distinct from the statutory subject-matter jurisdiction addressed in Section 1447(c), *see Lee*, 260 F.3d at 1004-1005, the *Lee* court additionally found that "[t]he remand statute, 28 U.S.C. § 1447(c), requires a district court to remand a removed "case" to state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction," including under the circumstance where the jurisdictional defect was constitutional, *id.* at 1006. The *Lee* court's final disposition of the matter before it provides little guidance as to the matter before this court; the *Lee* court determined that where a plaintiff in a removed action had standing to bring claims against some but not all defendants, remand of the entire action was not required under Section 1447, and the court left open the possibility whether it could have been appropriate to order remand only of the claims against the defendant as to whom the plaintiff lacked standing, on the procedural ground that the *Lee* plaintiff had consistently argued on appeal only in favor of remand of the entire action. *See id.* at 1006-1007.

In fact, "[t]he rule" in the Ninth Circuit is "that a removed case in which the plaintiff lacks Article III [*i.e.*, constitutional] standing must be remanded to state court under

§ 1447(c)

. . . ." *Polo v. Innoventions Int'l, LLC*, Case No. No. 14-55916, 2016 U.S. App. LEXIS 15180,

*7 (9th Cir. Aug. 18, 2016). The *Polo* court explained the reasoning underlying this rule as

follows:

> In an ordinary removal case, "if at any time before final judgment it appears that
> the district court lacks subject matter jurisdiction, the case shall be remanded."
> § 1447(c) (emphasis added). No motion, timely or otherwise, is necessary:
> ultimate responsibility to ensure jurisdiction lies with the district court. *Kelton
> Arms* [*Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*], 346 F.3d [1190,] 1192
> [(9th Cir. 2003)]. **Moreover, the district court generally must remand the case
> to state court, rather than dismiss it.** *Bruns v. Nat'l Credit Union Admin.*, 122
> F.3d 1251, 1257 (9th Cir. 1997). **Remand is the correct remedy because a
> failure of federal subject-matter jurisdiction means only that the federal
> courts have no power to adjudicate the matter. State courts are not bound
> by the constraints of Article III.** *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617,
> 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989).

*Id.* at *6-7 (emphasis supplied; internal modifications omitted).

The *Polo* court considered and rejected the defense argument that remand would be futile

because the state court would likewise find the claims at issue non-justiciable. *See id.* at *10-13.

First, the *Polo* court cast considerable doubt as to whether a district court could under any

circumstances properly dismiss rather than remand a removed action for lack of constitutional

jurisdictional authority, suggesting that Ninth Circuit precedent so finding "has been questioned,

and may no longer be good law." *Id.* at *10. Second, the *Polo* court made clear that, "even if it

remains good law" that a district court may so decline on futility grounds, "a district court must

have 'absolute certainty' that a state court would 'simply dismiss[] the action on remand'" before it

may elect to dismiss rather than remand the federally non-justiciable action. *Id., quoting Bell v.

City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). Here, the parties have not fully briefed the

question whether the Oregon courts would consider the merits of plaintiffs' claims; plaintiffs

have expressly adopted the position that the Oregon courts would properly consider the merits of

their claims; and at least some grounds exist in Oregon case law for concluding that the Oregon

courts would find that plaintiffs have standing to pursue their claims, *see, e.g., Generaux v.

Dobyns (In re Dobyns)*, 205 Or. App. 183, 187 (2006) ("[a] person has standing if resolution of

the issues presented will have a practical effect on his or her rights"). As such, I cannot find that

it is absolutely certain that the Oregon court which expressly retained jurisdiction over the

Judgment for purposes of enforcement actions would simply dismiss plaintiffs' claims on

standing grounds. In consequence, the only appropriate remedy for this court's lack of

constitutional authority to consider the merits of plaintiffs' removed claims is remand to state

court.[3]

## CONCLUSION

For the reasons set forth above, defendant's motion (#5) is granted in part and denied in

part as moot, and plaintiffs' action is remanded to the Multnomah County Circuit Court.

Dated this 14th day of September, 2016.

Honorable Paul Papak
United States Magistrate Judge

---

[3] Because this court lacks constitutional authority to consider the merits of plaintiffs'
claims, I do not consider defendant's alternative arguments in favor of dismissal pursuant to
Federal Civil Procedure Rule 12(b)(6).